UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

PAMELA MCVEY,                              )
                                           )
        Plaintiff,                         )
                                           )    No. 2:10-cv-231
v.                                         )
                                           )    *Collier / Lee*
COMMISSIONER OF SOCIAL SECURITY,           )
                                           )
        Defendant.                         )

### REPORT AND RECOMMENDATION

Plaintiff Pamela McVey brought this action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff and Defendant have both moved for summary judgment [Doc. 10, 12]. Plaintiff argues that the Commissioner's decision should be reversed and benefits awarded or, alternatively, that her claim should be remanded to the Administrative Law Judge ("ALJ") because the ALJ's residual functional capacity ("RFC") determination and hypothetical question posed to the vocational expert ("VE") did not accurately address all of Plaintiff's limitations. For the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for summary judgment [Doc. 10] be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 12] be **GRANTED**; and (3) the decision of the Commissioner be **AFFIRMED**.

I.     ADMINISTRATIVE PROCEEDINGS

Plaintiff initially filed her application for DIB and SSI on January 9, 2007, alleging disability as of September 27, 2006 (Transcript ("Tr.") 103-118). Plaintiff's claim was denied initially and upon reconsideration and she requested a hearing before the ALJ (Tr. 66-69, 73-76, 79-83). The

ALJ held a hearing on May 21, 2008, during which Plaintiff was represented by an attorney (Tr. 28-64). The ALJ issued his decision on June 19, 2008 and determined Plaintiff was not disabled because she could perform past relevant work (Tr. 19-27). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final, appealable decision of the Commissioner (Tr. 1-3). Plaintiff filed the instant action on October 18, 2010 [Doc. 2].

## II.   FACTUAL BACKGROUND

### A.   Education and Background

Plaintiff was 48 years old, a younger individual, at the time of the ALJ's decision (Tr. 32, 103). Plaintiff completed eleventh grade in special education classes and was one credit short of graduating high school (Tr. 33, 47). Plaintiff did not obtain her GED and testified that she could read "some" but not very well (Tr. 33). Plaintiff testified that she weighed 280 pounds, but had gained 60 pounds over the last six months and was told it was due to chronic obstructive pulmonary disease ("COPD") (Tr. 33). Plaintiff had previously worked as a caregiver, a salad bar attendant, and a paper inserter (Tr. 37-39). Plaintiff testified that she stopped working as of September 27, 2006 because she would drop things, become nervous and agitated, and have heart troubles and difficulty breathing (Tr. 36).

Plaintiff testified that she had problems breathing due to COPD and also suffered from back and leg pain after walking for ten minutes or bending over (Tr. 39). Plaintiff was born with one kidney and frequently had accidents with urination (Tr. 40). Plaintiff also suffered from depression and testified that with treatment, she no longer wanted to hurt herself or others, but she still experienced crying spells every day and had good days and bad days (Tr. 41-42, 46). Plaintiff testified to hearing voices telling her to hurt herself, but medication helped (Tr. 45-46). Plaintiff's

2

nerves made her "jiggery" and she would get nervous and drop things (Tr. 44). Her former managers had told Plaintiff that she could not keep up with the work pace (Tr. 44-45).

Plaintiff did not need assistance to bathe, dress, and groom herself (Tr. 47). Plaintiff's husband prepared meals, shopped, took care of the bills, and did whatever housework Plaintiff could not complete (Tr. 34-35, 43). Plaintiff testified she spent her days sitting in the house watching TV or resting in bed unless she felt like taking a walk (Tr. 35). When she did walk, she walked for about half a mile (Tr. 35). Plaintiff had to lie down and rest when she was very nervous or exhausted (Tr. 46).

### B. Medical Records[1]

#### 1. Physical

Plaintiff visited ETSU Physicians and Associates for the first time on September 27, 2006, complaining of cough, shortness of breath, and swelling in the legs (Tr. 289). Plaintiff reported dyspnea and chest pain on exertion (Tr. 289). Plaintiff was assessed with chronic bronchitis, a history of seizure disorder, exertional chest pain, history of congestive heart failure, and a history

---

[1] Plaintiff submitted additional medical evidence after the hearing before the ALJ, which consists of records from Johnson City Medical Center, ETSU, and Watauga Mental Health (Tr. 373-407). Although Plaintiff briefly discusses this additional evidence [Doc. 11 at PageID#: 39], Plaintiff makes no argument that the new evidence supports remand of her claim. The Commissioner argues that, as such, she has failed to demonstrate the requirements necessary for a remand pursuant to Sentence Six of 42 U.S.C. § 405(g) [Doc. 13 at PageID#: 63]. This Court cannot consider the new evidence in determining whether to uphold the ALJ's decision and, in the absence of an argument by Plaintiff that the new evidence supports a Sentence Six remand, I **CONCLUDE** Plaintiff has waived such an argument. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) ("While new evidence may be submitted for consideration to the appeals council. . . on appeal we still review the ALJ's decision, not the denial of review by the appeals council"); *Lewandowski v. Comm'r of Soc. Sec.*, No. 08-12982, 2009 WL 2885055, at *11 (E.D. Mich. Sept. 1, 2009) ("Material submitted subsequent to the administrative decision is subject to a narrow review by the district court. . . the district court cannot consider that new evidence in deciding whether to 'uphold, modify, or reverse the ALJ's decision.'").

of chronic tobacco abuse (Tr. 290). Plaintiff was prescribed several medications for these conditions (Tr. 290). An October 6, 2006 scan of Plaintiff's chest and abdomen (taken due to a history of asthma, gallstones, and COPD) showed a single kidney and a questionable element of pulmonary edema (Tr. 211-13).

Plaintiff visited ETSU Physicians and Associates again on November 1, 2006 for a follow-up visit (Tr. 285-88). Plaintiff reported feeling better but was still wheezing during the day (Tr. 287). Dr. Patel noted Plaintiff's history of dyspnea on exertion and lower extremity edema and noted that Plaintiff should undergo a sleep study due to her complaints of fatigue and sleepiness (Tr. 286). A November 9, 2006 chest scan showed no evidence of acute cardiopulmonary disease (Tr. 214).

Plaintiff submitted to a sleep study on November 20, 2006 and was noted to be significantly overweight with a history of congestive heart failure, "leaky heart valves," and asthma (Tr. 215). Plaintiff was diagnosed with moderate to severe obstructive apnea hypopnea syndrome and aggressive weight loss was recommended (Tr. 215).

Plaintiff was admitted to Johnson City Medical Center on November 27, 2006 after experiencing chest pain (Tr. 220). Plaintiff underwent cardiac catheterization, but no significant disease was found (Tr. 223, 229-30). Plaintiff was instructed to modify her lifestyle practices and to participate in activity as tolerated (Tr. 223). Plaintiff had a continuous positive airway pressure ("CPAP") sleep study performed on December 3, 2006 and was again diagnosed with moderate to severe obstructive apnea hypopnea syndrome (Tr. 231). Dr. Cole recommended aggressive weight loss, use of a CPAP, and avoidance of sedating medications, alcohol, and long distance driving (Tr. 231-32). On January 11, 2007, Plaintiff had a follow-up visit after her CPAP sleep study and it was noted she would continue to use the CPAP (Tr. 237-38).

4

Plaintiff saw Dr. Patel at ETSU Physicians and Associates on January 3, 2007 and reported feeling better, but she still experienced shortness of breath on exertion (Tr. 283-84). During examination, Dr. Patel noted inspiratory and expiratory wheezing bilaterally and diagnosed Plaintiff with dyspnea on exertion, etiology undetermined (Tr. 283). Dr. Patel referred Plaintiff to Dr. Jeff Farrow for a pulmonary consult (Tr. 283).

On January 22, 2007, Plaintiff first saw Dr. Farrow at Pulmonary Associates of East Tennessee (Tr. 239). Dr. Farrow diagnosed Plaintiff with COPD and started her on Spiriva (Tr. 239). Plaintiff underwent a pulmonary function test ("PFT") on January 24, 2007 which showed normal spirometric values with no evidence of obstruction (Tr. 241-42, 329). Plaintiff had a follow-up appointment at Pulmonary Associates of East Tennessee on February 26, 2007 and it was noted that her PFT was essentially normal (Tr. 253). Plaintiff was encouraged to lose weight, continue her medications, and stop smoking (Tr. 253).

On March 14, 2007, Plaintiff returned to ETSU Physicians and Associates for a follow-up visit (Tr. 280-82). Plaintiff reported that she quit smoking three or four months ago, was coughing less, and was better able to exercise (Tr. 281). Dr. Patel noted Plaintiff experienced dyspnea on exertion, but the PFTs were unremarkable and there was no evidence of obstructive disease (Tr. 280). Dr. Patel continued Plaintiff on Albuterol, Spiriva, and Qvar (Tr. 280). Plaintiff was advised to lose weight and to engage in mild to moderate exercise (Tr. 280).

State agency physician Louise Patikas, M.D. reviewed Plaintiff's file on March 26, 2007 and opined that Plaintiff could occasionally lift 50 pounds and frequently lift 25 pounds, could stand or walk for a total of six hours in an eight hour day, could sit for a total of six hours in an eight hour day, and was unlimited in her ability to push or pull (Tr. 299-306).

On June 3, 2007, Plaintiff presented at the emergency room complaining of chest pain (Tr. 365). Myocardial infarction was ruled out and it was determined that Plaintiff was at a low risk for any ischemic events or acute coronary syndrome (Tr. 365). Plaintiff was discharged the next day and was instructed to follow up with her primary care physician (Tr. 365).

State agency physician Kanika Chaudhuri, M.D., reviewed Plaintiff's file on June 4, 2007 and opined that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk for six hours in an eight hour day, and sit for six hours in an eight hour day (Tr. 339-46). Dr. Chaudhuri indicated that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation (Tr. 343). Dr. Chaudhuri noted that Plaintiff was only partially credible because she was noncompliant with her CPAP and continued to smoke and gain weight in spite of the recommendations of her physicians (Tr. 346).

### 2. Mental

On December 27, 2006, Plaintiff presented at Johnson City Medical Center and reported that she had been upset, angry, and throwing things for two months, and she felt like she was getting out of control (Tr. 233). Plaintiff was diagnosed with depression (Tr. 234). Plaintiff was referred to Watauga Mental Health and presented there the following day (Tr. 338). Plaintiff reported that she had been "going off" for the last three months and had been hearing voices for the last four months (Tr. 338). Plaintiff stated that she had been depressed for the last two years and had recent thoughts of self-harm (Tr. 338). Plaintiff's intake form indicated that her current global assessment of functioning ("GAF") was 50, her highest in the last six months was 55, and her lowest in the last six months was 50 (Tr. 331-32).

Plaintiff returned for an evaluation with Dr. Nuri Yong on January 29, 2007 (Tr. 336-37).

Dr. Yong diagnosed Plaintiff with depressive disorder, not otherwise specified, and assigned a GAF of 75 (Tr. 336). Dr. Yong continued Plaintiff on Prozac and Trazodone and Plaintiff was to continue individual therapy (Tr. 337).

On February 23, 2007, Kathy Miller, M.Ed performed a consultative examination (Tr. 246). Dr. Miller noted that Plaintiff looked older than her stated age and exhibited erratic concentration, but was appropriately dressed and cooperative (Tr. 246). Dr. Miller diagnosed Plaintiff with moderate depression and borderline intellectual functioning and assigned a GAF score of 55 (Tr. 250). Dr. Miller indicated that Plaintiff was limited in the following areas: her ability to understand and remember was limited by borderline intellectual functioning and was adequate for potential and simple instruction; her ability to sustain concentration and pace was limited by borderline intellectual functioning, and her motivation was markedly decreased due to depression; and her social interaction was limited by isolating behaviors and excessive sleeping (Tr. 250). Plaintiff did not have limitations with adaptation (Tr. 250).

On March 12, 2007, a reviewing psychologist opined Plaintiff is moderately limited in the ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions, respond appropriately to changes in the work setting, and interact appropriately with the general public (Tr. 260-77).

Plaintiff returned to Watauga Mental Health on April 16, 2007 for a medication evaluation with Dr. Yong and was doing well on Prozac (Tr. 334). Plaintiff was sleeping better on Trazodone and her affect was pleasant (Tr. 334).

Dorothy Tucker, Ph.D, a state agency psychologist, reviewed Plaintiff's record on June 15,

7

2007 and indicated Plaintiff was mildly limited in activities of daily living and moderately limited in social functioning and maintaining concentration, persistence and pace (Tr. 357). In Dr. Tucker's RFC assessment, she indicated that Plaintiff was moderately limited in the following abilities: understanding and remembering detailed instructions; carrying out detailed instructions; maintaining attention and concentration for extended periods; working in coordination with or proximity to others without being distracted; completing a normal workday and workweek without interruptions; interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers without distracting them; responding appropriately to changes in the work setting; being aware of normal hazards and taking appropriate precautions; and setting realistic goals or making plans independently (Tr. 361-62). Dr. Tucker clarified that Plaintiff would experience some, but not substantial, difficulty interacting with the public, coworkers, and supervisors, and recognizing hazards (Tr. 363). Further, Plaintiff could sustain concentration and persistence even with periods of increased signs and symptoms and could set limited goals and adapt to infrequent change (Tr. 363).

On July 9, 2007, Plaintiff returned to Dr. Yong for a medication evaluation (Tr. 370). Plaintiff reported that she was anxious and irritable partly because of her daughter's psychiatric hospitalization, and Prozac was no longer helping (Tr. 370). Dr. Yong discontinued Prozac and prescribed Clonazepam (Tr. 370-71).

### C. VE Testimony

The ALJ posed four hypothetical questions to the VE (Tr. 48). First, he asked the VE to consider a 48-year-old individual with an eleventh grade education, who can read and write at a sixth grade level, has Plaintiff's vocational profile, could perform physically at the level identified

8

in Exhibit 13 (Dr. Chaudhuri's evaluation) and was emotionally/mentally capable as described by Dr. Miller in Exhibit 4 (Tr. 49). The ALJ further clarified that in this hypothetical, the individual would need to rest during normal work breaks (Tr. 49). The VE testified that this individual would be able to perform all of her past relevant work (Tr. 49-50).

For the next hypothetical, the ALJ asked the VE to consider the same physical parameters, but to consider Exhibit 15 (Dr. Tucker's psychiatric assessment) instead of Dr. Miller's notes in Exhibit 4 (Tr. 50). To assist the VE, the ALJ also defined "moderate" difficulties as those which "would have an impact, but would not preclude" the activity (Tr. 50). The ALJ clarified that this individual would need to take brief pauses two to three times a day (up to 10 seconds at a time) to think about problems (Tr. 50). The VE testified that this individual could also perform all her past relevant work (Tr. 50).

Next, the ALJ posed a hypothetical in which the individual would need to rest for two hours or more each day due to depression and pain (Tr. 51). The VE testified that this individual would not be able to perform any jobs because no employer would accommodate a break of that length (Tr. 51).

Finally, the ALJ asked the VE to consider an individual who would have to take unscheduled bathroom breaks and may have to get to the bathroom right away or change clothes and clean up three to four times a day (Tr. 51). The VE testified that this individual would not be able to perform any jobs (Tr. 51).

## III. ALJ'S FINDINGS

### A. Eligibility for Disability Benefits

The Social Security Administration determines eligibility for disability benefits by following

9

a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment-i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities-the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

### B.     ALJ's Application of the Sequential Evaluation Process

At step one of the sequential process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since September 27, 2006 (Tr. 21). At step two, the ALJ found Plaintiff had "severe impairments" including: obesity and exertional dyspnea, smoker's bronchitis/chronic obstructive pulmonary disease; questionable history of congestive heart failure; hypertension; depression; and borderline intellectual functioning (Tr. 21-22). At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments to meet or medically equal any of the presumptively disabling listed impairments (Tr. 22). The ALJ then determined Plaintiff had

10

the RFC to perform a range of medium exertional work and could lift/carry 50 pounds occasionally and 25 pounds frequently, stand/walk for six hours out of eight, and sit for six hours out of eight (Tr. 23). The ALJ found Plaintiff was moderately limited in her ability to do the following: understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; and set realistic goals or make plans independently of others (Tr. 23). The ALJ defined a moderate limitation as one that would have an impact on Plaintiff's ability to perform the activity, but would not preclude that activity (Tr. 23). The ALJ indicated that Plaintiff would have to take brief pauses to think about what she was doing, but would not be taken off task (Tr. 23). At step four, the ALJ found Plaintiff was able to perform her past relevant work because such work was not precluded by her RFC (Tr. 27). This finding led to the ALJ's determination that Plaintiff was not under a disability as of September 27, 2006 (Tr. 27).

**IV.    ANALYSIS**

Plaintiff asserts two arguments to bolster her contention that the ALJ's decision is not supported by substantial evidence. First, Plaintiff argues the ALJ's RFC is not supported by substantial evidence because the ALJ failed to incorporate limitations implicated by Plaintiff's exertional dyspnea and COPD, which the ALJ himself found to be severe. Second, Plaintiff argues

11

the ALJ failed to pose a hypothetical question to the VE that accurately portrayed Plaintiff's mental limitations because the question posed did not incorporate the mental limitations outlined in the ALJ's RFC determination. Plaintiff contends the ALJ relied on a hypothetical in which he asked the VE to consider the mental limitations in Exhibit 4, which is the examination by Ms. Miller, but the RFC incorporated the limitations imposed by the review by Dr. Tucker. As such, Plaintiff argues the question posed to the VE did not accurately portray her mental limitations as included in the ALJ's RFC determination.

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters*, 127 F.3d at 528). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Id.* (internal quotes omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without

interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sep. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claim of error without further argument or authority may be considered waived).

### B. The ALJ's RFC Determination and Hypothetical Questions

Both of Plaintiff's arguments concern the relationship between the ALJ's RFC determination and the hypothetical questions posed to the VE. The RFC is an assessment of the claimant's remaining capacity for work once the claimant's limitations have been considered, while the hypothetical question is intended to be a more complete assessment of the claimant's physical and mental state. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). The ALJ is not required to solicit VE testimony to determine if a claimant can perform past relevant work. *See* 20 C.F.R. § 404.1560(b)(2); *see also Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) ("The regulations permit an ALJ to use the services of a vocational expert at step four to determine whether a claimant can do his past relevant work, given his RFC."). Nonetheless, a VE's

13

testimony in response to a hypothetical is substantial evidence regarding the existence of jobs that the claimant can perform as long as the hypothetical question "accurately portrays [her] individual physical and mental impairments." *See Farley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). The hypothetical need not include all the claimant's diagnoses, but should merely reflect the claimant's RFC (as previously determined by the ALJ) as well as her vocational factors of age, experience, and education. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). An error in formulating the hypothetical question can be harmless if the hypothetical is more favorable to the claimant than the ALJ's RFC determination. *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 845 (6th Cir. 2005).

### 1. Physical Impairments

Plaintiff first argues that the ALJ's RFC as to her physical abilities failed to incorporate necessary limitations based on her exertional dyspnea and COPD, impairments the ALJ found to be severe [Doc. 11 at PageID#: 41]. The ALJ determined Plaintiff could perform a full range of medium work, with the ability to lift and/or carry up to 50 pounds occasionally and 25 pounds frequently, could stand/walk for a total of six hours in an eight-hour day, and could sit for a total of six hours in an eight-hour day (Tr. 23). This RFC did not include any limitations implicated by Plaintiff's respiratory impairments and Plaintiff argues the ALJ's failure to address these respiratory impairments and the failure to discuss why the limitations were not included in the RFC constitutes error [Doc. 11 at PageID#: 41]. Plaintiff alleges that these failures violate Social Security Ruling ("SSR") 96-6p, which provides the ALJ must consider and discuss RFC assessments by state agency physicians in the decision [*id.* at PageID#: 41-42].

The Commissioner argues that Dr. Chaudhuri's environmental limitations were incorporated

14

in the hypothetical question posed to the VE because the ALJ specifically asked the VE to consider Dr. Chaudhuri's report in his first two hypothetical questions [Doc. 13 at PageID#: 61-62]. The Commissioner argues the VE, therefore, answered the hypothetical question after incorporating the limitations assessed by Dr. Chaudhuri, which involved Plaintiff's exposure to fumes, odors, dust, gases, etc. The VE testified that an individual with the physical limitations imposed by Dr. Chaudhuri and the mental limitations imposed by Dr. Miller or Dr. Tucker could perform all of Plaintiff's past relevant work (Tr. 49-50).

As a preliminary matter, I **FIND** that the ALJ's failure to specifically address the limitations imposed by Dr. Chaudhuri does not implicate SSR 96-6p because the ALJ did address Dr. Chaudhuri's opinion and gave it great weight (Tr. 25). Furthermore, because the hypothetical question posed to the VE was more restrictive than the ALJ's RFC determination and the VE still found Plaintiff could perform all of her past relevant work, I **FIND** that the ALJ's conclusion that Plaintiff could perform her past relevant work and was not under a disability was supported by substantial evidence. The VE's testimony in response to the ALJ's first and second hypothetical question was based in part on her review of Dr. Chaudhuri's report, including the limitations Dr. Chaudhuri outlined. The ALJ incorporated Dr. Chaudhuri's full opinion into his hypothetical questions posed to the VE (Tr. 25, 48-49). After taking into account Dr. Chaudhuri's report, the VE testified that Plaintiff could perform all of her past relevant work. The ALJ relied on the VE's testimony to reach this conclusion and did not leave out relevant limitations in posing the hypothetical to the VE, which would have required remand; instead, the ALJ essentially imposed *more* limitations in the hypothetical than those he specifically outlined in Plaintiff's RFC, which would not require remand. *See Pasco*, 137 F. App'x at 845 ("[W]e have remanded an ALJ's

15

decision where the hypothetical question posited to the vocational expert did not accurately reflect the claimant's limitations . . . . Here, however, the hypothetical posited to the VE was more favorable to Pasco than the RFC that the ALJ ultimately determined. . . we hold that finding an RFC different from the hypothetical given the VE was not reversible error.") Accordingly, I **CONCLUDE** that the ALJ's determination that Plaintiff had the RFC to perform her past relevant work was supported by substantial evidence.

### 2. Mental Impairments

Plaintiff's second argument involves the hypothetical question posed to the VE as it pertains to Plaintiff's mental impairments. The ALJ stated in his decision that he gave great weight to hypothetical question number one, but in this question, the VE was asked to consider the mental limitations imposed by Dr. Miller; in his RFC determination, however, the ALJ referenced the mental limitations imposed by Dr. Tucker, which were considered by the VE in hypothetical question two [Doc. 11 at PageID#: 43]. Plaintiff states that the hypothetical question posed to the VE did not accurately portray the limitations found by the ALJ and, as such, the VE's testimony cannot be used to support the ALJ's conclusion that Plaintiff can perform her past work [*id.* at PageID#: 44].

The Commissioner asserts the ALJ simply referenced the wrong hypothetical question in his decision and meant to state he was giving great weight to hypothetical number two, in which the VE was considering the limitations imposed by Dr. Tucker that are included in the ALJ's RFC determination [Doc. 13 at PageID#: 14-15]. The Commissioner argues that the ALJ's statement that he was relying on hypothetical question one was harmless error [*id.* at PageID#: 15].

The Court is fully aware of its obligation to defer to the agency's decision where it is

16

supported by substantial evidence. 42 U.S.C. § 405(g). As a corollary to this principle of deference, however, a reviewing court may affirm an agency's decision only on grounds articulated by the decisionmaker. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 50 (1983) (stating that "an agency's action must be upheld, if at all, on the basis articulated by the agency itself"). Thus, a court should not speculate what the ALJ *might* have decided. *SEC v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947) ("It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive.").

In his decision, the ALJ stated as follows:

> In response to hypothetical question number 1, the vocational expert further testified that an individual with the claimant's residual functional capacity is capable of performing the requirements of such past relevant work.
>
> Hypothetical question number 1 closely resembles the claimant's residual functional capacity, and I assign determinative weight to this conclusion. Other hypothetical questions and alleged limitations posed to the vocational expert are rejected since they are not supported by the substantial evidence in this case.

(Tr. 27). As a functional matter, the VE's responses to both hypothetical number one and hypothetical number two were identical, and the only difference between the two questions was the ALJ's direction for the VE to consider Dr. Miller's findings in the first question and Dr. Tucker's findings in the second. The ALJ's RFC determination, however, reproduces the limitations imposed by Dr. Tucker, which were incorporated into hypothetical number two, essentially verbatim (Tr. 23, 360-61). During the discussion of hypothetical number two, the ALJ and VE engaged in a discourse about Dr. Tucker's indication of moderate limitations, and the ALJ formulated the definition of moderate that appears in his RFC determination (Tr. 49-50). This hypothetical question also

17

incorporated the limitations imposed by Dr. Chaudhuri, as referenced above (Tr. 49-50).

Therefore, the ALJ's RFC determination closely mirrors hypothetical question two, yet the ALJ referenced hypothetical number one in his decision and indicated that this hypothetical closely mirrored the RFC determination. The ALJ's decision is flawed in this respect, but the error is harmless because remanding the case to correct this minor error would likely be a mere formality and serve no substantive purpose. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (remand would not be necessary in the context of the treating physician rule for a "harmless *de minimis* procedural violation"). Furthermore, the ALJ's decision, albeit flawed, is supported by substantial evidence and there is no indication that remand to correct an essentially typographical error would result in a favorable decision for Plaintiff. I **FIND** that although the ALJ mistakenly referenced the wrong hypothetical question in his decision, the error is harmless because the ALJ reasonably relied on testimony and a proper hypothetical question to reach his conclusion that Plaintiff could perform her past relevant work. Accordingly, I **CONCLUDE** that the ALJ's determination that Plaintiff had the RFC to perform her past relevant work was supported by substantial evidence.

## V. CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I

**RECOMMEND** that:[2]

    (1)    Plaintiff's motion for summary judgment [Doc. 10] be **DENIED**.

    (2)    The Commissioner's motion for summary judgment [Doc. 12] be **GRANTED**.

    (3)    The Commissioner's decision denying benefits be **AFFIRMED**.

                      s/ *Susan K. Lee*
                      SUSAN K. LEE
                      UNITED STATES MAGISTRATE JUDGE

---

[2] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).